UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 07-240-05 MJD/FLN |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| 05 - Michael Richard Berry, | |
| Defendant. | |

_____

Ann M. Anaya, Assistant United States Attorney, for the Government.
Daniel M. Scott, Esq., for Defendant.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 12, 2007, on Defendant's Motion for a Bill of Particulars [#109], Defendant Motion to Suppress Statements, Admissions and Answers [#112], Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#113], Defendant's Motion to Dismiss Indictment for Failure to State an Offense [#114] and Defendant's Motion to Suppress Eyewitness Identifications [#119]. At the hearing, the Court received testimony from Drug Enforcement Agency ("DEA") Special Agent ("SA") Warren Adamson. Neither party submitted any exhibits during the course of the hearing. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the conclusion of the hearing, defense counsel declined an opportunity to make any oral or written arguments, and simply submitted the motions on the record.

For the reasons which follow, this Court recommends Defendant's Motions be **GRANTED** in part

and **DENIED** in part.

## I.  FINDINGS OF FACT

SA Adamson has been working for the Minneapolis office of the DEA for two and a half years. Prior to starting with the DEA, he received sixteen weeks of basic training.

On November 10, 2007, Adamson was working with Minnesota Trooper Michael Flanagan, who is a task force officer assigned to the DEA. SA Adamson testified that at approximately 11:35 a.m. on that morning he, along with Trooper Flanagan, arrived at WSI Towing located at the intersection of Lyndale and Glenwood Avenues. They went there to arrest Defendant Berry pursuant to an arrest warrant in this case and knew that Defendant was attempting to pick up his car that had been towed. After positively identifying Defendant, SA Adamson testified that they arrested him at approximately 11:45 a.m. inside the impound lot. SA Adamson said they read Defendant the *Miranda* warning and told him why he was under arrest. SA Adamson read the *Miranda* warning word-for-word from his DEA 13A card. The parties stipulated that the card recites the proper *Miranda* warning.

SA Adamson testified that Defendant did not appear impaired by drugs or alcohol and did not appear exceptionally tired or mentally ill. Defendant did not request medical assistance and had no trouble communicating with the officers. SA Adamson testified that Defendant asked the officers if he was supposed to have a lawyer. SA Adamson said that he told Defendant if he wanted to get a lawyer that communication between them would stop. They discussed the logistics of removing Defendant's car from the impound lot. SA Adamson testified that neither he nor Trooper Flanagan made any threats or promises to Defendant. SA Adamson testified that Defendant voluntarily accepted the DEA offer to take custody of the car so that Defendant would not incur any additional storage fee. SA Adamson then worked with

the Defendant to pay the towing fee for Defendant's car and to turn the car over to Adamson and the DEA rather than keep it in the tow lot and incur fees. SA Adamson said he asked Defendant if there were guns or controlled substances in the car and Defendant said no. SA Adamson attempted to move Defendant's car but it would not start because Defendant's key was not the original key. He testified that, at that point, since it appeared that the car would have to remain in the impound lot, Defendant said he wanted to retrieve a backpack from the car. Defendant told SA Adamson and Trooper Flanagan that the backpack belonged to a friend who would take the heat for the contents. However, SA Adamson testified that an employee of the towing company told SA Adamson that Defendant told him he was concerned about "his" bag. SA Adamson testified that he retrieved the backpack from the car and believed that it belonged to Defendant despite Defendant's denials. SA Adamson made arrangements to take Defendant's car to the DEA lot. Because Defendant was under arrest, he could not take the backpack with him so SA Adamson took custody of it.

     SA Adamson testified that while he, Trooper Flanagan, and Defendant were driving to the DEA office, Defendant said that he might want to talk in response to the prospect of spending the long Veteran's Day Weekend in jail. At that point, Trooper Flanagan, who was driving, pulled over the car and SA Adamson read Defendant his *Miranda* rights again. SA Adamson said that Defendant told them: "I am interested in helping myself out." Adamson testified that it appeared that Defendant understood what was going on. SA Adamson testified that he made no threats or promises to Defendant; that Defendant did not request an attorney. SA Adamson testified that they continued questioning Defendant at the DEA office. They spoke for about 45 minutes or one hour at the office. At the office, Defendant was offered something to drink; he did not request a lawyer; he did not say that he did not want to talk; and he did not request to

make a phone call. During the one hour conversation, Defendant identified his co-conspirators and agreed to help locate and capture a woman he knew only as "Red."

SA Adamson testified that he later inspected the backpack and found 15 cell phones, a PDA, 8-10 syringes, and an unidentifiable liquid in a rubbing alcohol bottle.

## II.  CONCLUSIONS OF LAW

### A.  Defendant's Motion for a Bill of Particulars [#109].

The Motion for a Bill of Particulars is granted in part and denied in part. The motion is granted to the extent that the Government must identify co-conspirators known to the Grand Jury. The motion is denied in all other respects. The Court notes that the drug conspiracy statute, 21 U.S.C. § 846, under which the Defendant is indicted does not require an allegation of an affirmative act in furtherance of the conspiracy, nor does it require proof of any such overt act at trial to establish a violation of the statute. *United States v. Shabani*, 513 U.S. 10, 13 (1994).

### B.  Defendant's Motion to Suppress Statements, Admissions and Answers [#112].

The Court recommends that this motion be denied. In this case, it is clear that the Defendant was in custody. It is equally clear that Defendant knowingly and voluntarily waived his rights under the Fifth and Sixth Amendments. SA Adamson testified that he read the Defendant his *Miranda* rights twice and that Defendant was not under influence of alcohol or drugs and appeared to clearly understand what was going on. Adamson testified that Defendant told him: "I am interested in helping myself out." The Court finds that the Defendant knowingly and voluntarily waived his right to remain silent and his right to counsel and that Defendant's Fifth and Sixth Amendment rights were not violated.

### C.    Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#113]

The Court recommends that this motion be denied. The Defendant seeks suppression of the items contained in the backpack. The Government contends that the Defendant consented to the search of the backpack when he agreed to allow his car to be kept at the DEA lot. The Court recommends that the evidence should be admissible because it would have been inevitably discovered.

During the course of the arrest at the impound lot, the Defendant handed over his keys to SA Adamson and told him that he wanted the DEA to keep his car in custody and that he wanted to retrieve the backpack from the car. SA Adamson retrieved the backpack from the car and brought it with them to the DEA office. Assuming but without deciding that the backpack was illegally obtained, the inevitable discovery exception applies. *Murray v. U.S.*, 487 U.S. 533, 539 (1988). At the time that SA Adamson removed the backpack from the car, the Defendant had already agreed to allow the DEA to remove his car from the impound lot and store it. The Defendant had already handed over his keys to SA Adamson. If SA Adamson had left the backpack in the car, law enforcement would have discovered the backpack in the course of conducting an inventory search. After lawfully taking custody of property, police may conduct a warrantless search of the property to satisfy three purposes: (1) to protect the owner's property while it is in policy custody; (2) to protect the police against claims of lost or stolen property; and (3) to protect the police from potential danger. *Colorado v. Bertine*, 479 U.S. 367, 372 (1987). Therefore the Court recommends that the motion to suppress be denied.

### D.    Defendant's Motion to Dismiss Indictment for Failure to State an Offense [#114]

The Court recommends that this motion be denied. 21 U.S.C. § 846 provides that: "[a]ny person

who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." The indictment alleges that the Defendant "knowingly conspired with other persons . . ." to distribute marijuana. The indictment adequately alleges a violation of the conspiracy statute. *See also* part A of this Report and Recommendation.

E.      **Defendant's Motion to Suppress Eyewitness Identifications [#119]**

The Court recommends that this motion be denied because the parties represented that there were no eyewitness identifications.

### III. RECOMMENDATION AND ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for a Bill of Particulars [#109] is **GRANTED in part** and **DENIED in part**, as follows:

1. To the extent that Defendant requests the Government to identify co-conspirators known to the Grand Jury, the motion is **GRANTED**.
2. The motion is **DENIED** in all other respects.

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's motions to suppress and to dismiss [##112, 113, 114, 119] be **DENIED.**

DATED: December 28, 2007                    ____s/Franklin L. Noel _____
                                            FRANKLIN L. NOEL
                                            United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **January 10, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **January 10, 2008** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.